THIRD DIVISION
FEBRUARY 3, 2010

No. 1-08-3668

| | | |
|---|---|---|
| DONALD L. PENCE, JR., | )_____ | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 05 L 66001 |
| NORTHEAST ILLINOIS REGIONAL | ) | |
| COMMUTER RAILROAD CORPORATION, | ) | |
| d/b/a METRA, | ) | The Honorable |
| | ) | Edward Antonietti, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE COLEMAN delivered the opinion of the court:

Plaintiff, Donald Pence, appeals the circuit court's order granting summary judgment in favor of the defendant, Northeast Illinois Regional Commuter Railroad Corporation (Metra). Plaintiff sought recovery for injuries caused as a result of tripping on the railroad tracks at a grade-level crossing near the Midlothian, Illinois, Metra station. After initially denying Metra's motion for summary judgment, the circuit court granted the motion upon reconsideration, finding that Metra did not owe Pence a duty because he was not a passenger and the alleged defect was *de minimis*. For the reasons that follow, we affirm.

BACKGROUND

On February 10, 2004, Donald Pence parked his car in a Metra owned parking lot on Hamlin Avenue southwest of the train station in Midlothian, Illinois. He proceeded in the direction of the station. Upon reaching 147th Street, Pence walked diagonally across the street

and in the middle of the street, where the railroad tracks intersect 147th Street, Pence tripped on a bolt protruding from a railroad tie. As a result of the fall, Pence broke his right wrist and left shoulder.

Pence filed a complaint alleging that Metra failed to maintain its premises, including the grade-level railroad tracks, in a reasonably safe condition. Metra filed a motion for summary judgment pursuant to section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2002)), arguing that it was immune under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-102(a) (West 2002)). Metra argued that it did not owe Pence a duty as a matter of law because he crossed the railroad tracks outside of a pedestrian crosswalk and thus he was not a permitted and intended user of the street. The trial court denied Metra's motion for summary judgment. Metra filed a motion for reconsideration arguing that the trial court had misapplied existing law. Pence filed a motion to strike or dismiss, pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2002)), Metra's motion for reconsideration, which the trial court denied. The trial court granted Metra's motion for summary judgment upon reconsideration and dismissed the complaint finding that Metra did not owe Pence a duty since he was not a Metra passenger at the time of his injury and the defect was *de minimis*. This appeal followed.

## DISCUSSION

Initially, we note Pence's argument that the trial court erred by denying his motion to strike as untimely Metra's motion to reconsider the denial of Metra's motion for summary judgment. The court could have reconsidered the summary judgment at any time. Even if we assume that Metra's motion to reconsider was untimely, any error in failing to strike the motion as such would be harmless since " 'a trial court may deny a motion for summary judgment and later

2

change its position and grant the same motion.' " *Buffa v. Haideri,* 362 Ill. App. 3d 532, 538 (2005), quoting *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.,* 292 Ill. App. 3d 131, 136-37 (1997). Here, the trial court denied Pence's motion to strike and reconsidered its denial of Metra's motion for summary judgment.

On appeal, Pence argues that Metra owed him the highest duty of care because Metra is a common carrier. Pence contends that the trial court erred in finding as a matter of law that he was not a passenger at the time of his injury and that the protruding bolt was a *de minimis* defect. Pence further argues that the Tort Immunity Act does not apply to Metra and, even if it does, Metra is not immune from liability since Pence was an intended and permitted user of Metra's grade crossing.

The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence which was not available at the time of the hearing, changes in the law or errors in the court's previous application of existing law. *Caywood v. Gossett*, 382 Ill. App. 3d 124, 133 (2008). As a general rule we review a motion to reconsider for abuse of discretion. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 837-38 (2002). " ' "But a motion to reconsider an order granting summary judgment raises the question of whether the judge erred in his previous application of existing law. Whether the court has erred in the application of existing law is not reviewed under an abuse-of-discretion standard. [Citation.] As with any question regarding the application of existing law, we review the denial of such a motion *de novo.*" [Citation.]' " *Duresa v. Commonwealth Edison Co.,* 348 Ill. App. 3d 90, 97 (2004), quoting *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.,* 318 Ill. App. 3d 571, 577 (2000); see also *O'Connor v. County of Cook*, 337 Ill. App. 3d 902, 911 (2003) (stating that we review "the trial court's application of law to the facts presented before it on a *de novo* basis").

3

Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). Courts consider all the evidence presented in the light most favorable to the nonmoving party when determining whether the moving party is entitled to summary judgment. *Purtill v. Hess,* 111 Ill. 2d 229, 240 (1986). The movant's right to summary judgment must be "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill. 2d 90, 102 (1992).

In order to prevail in a cause of action for negligence, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff suffered an injury proximately caused by the breach of duty. *Curatola v. Village of Niles,* 154 Ill. 2d 201, 207 (1993). Resolution of the instant appeal requires us to determine whether Metra owed Pence a duty of care. The existence of a duty is a question of law for the court. *Skelton v. Chicago Transit Authority,* 214 Ill. App. 3d 554, 572 (1991). If the court finds that no duty exists, then summary judgment for the defendant is proper. *Vesey v. Chicago Housing Authority,* 145 Ill. 2d 404, 411 (1991).

A common carrier must exercise the highest degree of care for its passengers. *Skelton,* 214 Ill. App. 3d at 572, citing *Katamay v. Chicago Transit Authority,* 53 Ill. 2d 27, 29 (1972). "The passenger to whom the carrier owes the duty to exercise the highest degree of care is one who is in the act of boarding, is upon, or is in the act of alighting from, the carrier's vehicle." *Katamay,* 53 Ill. 2d at 29. In order to come within the definition of a passenger, it is not necessary for the individual to have come into physical contact with the train. *Katamay*, 53 Ill. 2d at 29. "Illinois courts have long held that a contractual relationship between passenger and carrier begins when

4

the passenger has presented himself at the proper place to be transported with the intention of becoming a passenger and is then either expressly or impliedly accepted by the carrier for transportation." *Skelton,* 214 Ill. App. 3d at 572.

Pence asserts that he was a Metra passenger because he purchased a ticket, parked in a Metra parking lot, and fell while crossing 147th Street with the intention of boarding a Metra train. The record shows that Pence had not purchased a ticket that morning to board the train, but possessed a monthly pass that he could use at any time. Although it is unnecessary for a person to possess a ticket in order to be a passenger, possession of a ticket does not, by itself, create the passenger-carrier relationship. See *Skelton,* 214 Ill. App. 3d at 572; *Illinois Central R.R. Co. v. O'Keefe,* 168 Ill. 115, 120 (1897) ("The purchase of a ticket does not make one a passenger unless he comes under the charge of the carrier and is accepted for carriage by virtue of it"); *Burns v. Regional Transportation Authority,* 112 Ill. App. 3d 464, 468 (1982). Moreover, Pence was in the middle of a public roadway when he fell. His own affidavit states that he was crossing 147th Street diagonally when he tripped on a protruding bolt. Although the bolt was part of Metra's track system at the grade-level crossing, it cannot be said that Pence was in the proper place for transportation the time of his fall. As our supreme court pointed out long ago in *Jennings,* "[a]ny person walking toward a train on a public sidewalk might have no intention whatever of taking the train but might have an intention to keep on along the street. So long as a person merely intends to be carried but has not reached any place provided for passengers or used for their accommodation he is not a passenger." *Chicago & Eastern Illinois R.R. Co. v. Jennings,* 190 Ill. 478, 487 (1901).

Therefore, while Pence may have intended to be a passenger on a Metra train, he had not yet become a passenger at the time of his fall. Pence had not yet reached a "proper place to be

transported" and we cannot say that Metra had even impliedly accepted him for transportation. *Skelton,* 214 Ill. App. 3d at 572. Again, as our supreme court articulated in *Jennings*, "the circumstances must be such that the company will understand that such a person is a passenger in its care and entitled to its protection." *Jennings,* 190 Ill. at 486. Accordingly, Pence was not a passenger at the time of his fall and, as a matter of law, Metra did not owe him the highest duty of care.

We must next determine whether Metra owed Pence a duty as an owner and occupier of land. Metra contends that it is immune from liability pursuant to section 3-102(a) of the Tort Immunity Act. 745 ILCS 10/3-102(a) (West 2002). The duty of a local government entity to maintain its property is limited by section 3-102 of the Tort Immunity Act (745 ILCS 10/3-102 (West 2004)). *Vaughn v. City of West Frankfort,* 166 Ill. 2d 155, 158 (1995). Section 3-102(a) states in pertinent part:

> "Except as otherwise provided in this Article, a local public
> entity has the duty to exercise ordinary care to maintain its property
> in a reasonably safe condition for the use in the exercise of ordinary
> care of people whom the entity intended and permitted to use the
> property in a manner in which and at such times as it was reason-
> ably foreseeable that it would be used, and shall not be liable for
> injury unless it is proven that it has actual or constructive notice of
> the existence of such a condition that is not reasonably safe in
> reasonably adequate time prior to an injury to have taken measure
> to remedy or protect against such condition." 745 ILCS 10/3-
> 102(a) (West 2002).

Pence argues that the Tort Immunity Act does not apply since Metra was operating as a common carrier and section 2-101 states: "Nothing in this Act affects the liability, if any, of a local public entity *** based on: *** b. [o]peration as a common carrier." 745 ILCS 10/2-101 (West 2002). We disagree. Illinois courts have interpreted section 2-101 of the Tort Immunity Act, not as an exclusion from the Act for common carriers (other than the Chicago Transit Authority, which is expressly excluded), but as a preservation of the standard of care imposed upon a common carrier as to its passengers. See *Slaughter v. Rock Island County Metropolitan Mass Transit District,* 275 Ill. App. 3d 873, 875 (1995); *Cooper v. Bi-State Development Agency,* 158 Ill. App. 3d 19, 25 (1987); see also *Fujimura v. Chicago Transit Authority,* 67 Ill. 2d 506, 514 (1977). As discussed above, Metra was not operating as a common carrier with respect to Pence at the time of his fall since he was not a passenger.

In *Nelson v. Northeast Illinois Regional Commuter R.R. Corp.,* 364 Ill. App. 3d 181, 190 (2006), this court addressed the application of section 3-102(a) of the Tort Immunity Act to Metra. The issue in *Nelson* involved the scope of immunity under section 3-102(a) and whether it could apply to an "activity" on the property or only to "conditions" on the property. *Nelson*, 364 Ill. App. 3d at 189. We held that section 3-102(a) immunity applies when two requirements are met: "(1) the injured party was not an intended and permitted user of the property; and (2) the injury arose from the condition on the property." *Nelson*, 364 Ill. App. 3d at 190.

We must first determine whether Pence was a permitted and intended user of the street. Pence asserts that Metra invited its passengers to cross the grade crossing by having parking lots and a bridge over a creek for passengers to use, and thus, he was a permitted and intended user of the street. Pence further argues that Metra owes a duty of reasonable care to Pence as a

permitted user of the street since it did not prevent people from crossing the grade crossing and no citations or fines would issue to people that crossed the tracks.

However, even though Metra may have *permitted* Pence to cross its tracks diagonally at the grade crossing outside of a crosswalk, Pence would also have to be an *intended* user of the street in order for Metra to be liable for his injury. "[S]ection 3-102(a) of the [Tort Immunity] Act only imposes a duty of ordinary care on [a local public entity] to maintain property for uses that are *both* permitted *and intended*." (Emphasis in original.) *Vaughn,* 166 Ill. 2d at 160. In *Wojdyla v. City of Park Ridge,* the court indicated that we should examine the property itself to determine its intended use. *Wojdyla v. City of Park Ridge,* 148 Ill. 2d 417, 426 (1992). The court described indications of intended use: streets are paved, marked and regulated by traffic signs for use by vehicles; "[p]edestrian walkways are designated by painted crosswalks by design, and by intersections by custom." *Wojdyla,* 148 Ill. 2d at 426. Following this reasoning, pedestrians who cross streets outside of crosswalks are not intended users of the street as contemplated in section 3-102 of the Tort Immunity Act. *Vaughn,* 166 Ill. 2d at 161; *Wojdyla*, 148 Ill. 2d at 426.

Here, it is undisputed that Pence did not use a crosswalk to cross from the south side to the north side of 147th Street. Pence's own affidavit states that he crossed *diagonally* across 147th Street. There is no evidence that a crosswalk exists in that location. There is ample deposition testimony from Pence himself and from Metra employees, including Metra police lieutenant Thomas Donegan and Metra bridges and buildings driver Edmundo Campos, that crosswalks are available for pedestrians to use. In his deposition, Pence testified that he crossed *diagonally* from the south side to the north side of 147th Street. During his deposition, Pence was asked to mark on a photograph of the grade crossing at 147th Street the location where he tripped. Pence indicated the middle of the street, where the tracks intersect 147th Street.

Testimony from Metra employees, Campos and Donegan, indicated that there was no crosswalk at the location where Pence indicated he fell. Furthermore, Donegan testified that there are no crosswalks in the middle of the road and when he interviewed Pence after the fall to make the report, Pence indicated that he tripped on a bolt sticking out of the wood in the middle of the intersection. Based on the foregoing evidence from the record, Pence was not an intended user of the middle of the street since he was not in a crosswalk. Our supreme court has declined to impose a duty of reasonable care on municipalities to pedestrians who cross a street outside of crosswalks. *Vaughn,* 166 Ill. 2d at 157; *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208 (1993). Therefore, Metra owed no duty to Pence and summary judgment in favor of Metra was proper.

Pence further contends that the trial court erred by finding that the bolt on which he tripped was a *de minimus* defect, which Metra had no duty to repair. Since we have concluded that Metra owed no duty to Pence pursuant to the Tort Immunity Act, we need not reach the question of whether the bolt on which Pence tripped was *de minimis.*

Based on all of the foregoing, we conclude that Metra owed no duty to Pence as a matter of law since he was not a passenger at the time of his fall and he was not in a crosswalk. Accordingly, summary judgment in favor of Metra was proper.

Affirmed.

QUINN and STEELE, JJ., concurring.