FIFTH DIVISION
August 13, 2010

No. 1-09-0948

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT


| | | |
|---|---|---|
| ANA DEL REAL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 05 L 13171 |
| NORTHEAST ILLINOIS REGIONAL COMMUTER | ) | |
| RAILROAD CORPORATION, Commonly Known as | ) | Honorable |
| the Metra Electric Line, | ) | Jeffrey Lawrence, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |


JUSTICE FITZGERALD SMITH delivered the opinion of the court:

This cause of action arose when plaintiff Ana Del Real (plaintiff) allegedly slipped and broke her back while attempting to enter a train platform owned and operated by defendant Metra Electric Line (Metra). Plaintiff sued Metra for damages claiming breach of contract and negligence. Metra moved to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2006)), contending that there was no contract of carriage, and that Metra was immune from plaintiff's negligence claims pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 et seq. (West 2006)). The trial court granted Metra's section 2-619 motion to dismiss,

No. 1-09-0948

and plaintiff now appeals. On appeal, plaintiff contends that (1) the trial court incorrectly ruled that the Tort Immunity Act applied to and barred her negligence claim and (2) the trial court incorrectly ruled that the Tort Immunity Act applied to and barred her breach of contract claim. For the following reasons, we affirm.

I. BACKGROUND

Prior to the June 1, 2000, incident, plaintiff commuted to and from the 83rd Street Station on the Metra Electric District line. She would normally enter the station from the north, or from the 82nd Street side of the platform. On the day in question, plaintiff allegedly slipped and fell "while attempting to board the northern side of the platform," breaking her back.

On November 16, 2005, plaintiff filed a complaint alleging that Metra was negligent. Specifically, plaintiff alleged that Metra failed to construct a safe ingress to the platform on the north side and that it was foreseeable that persons who live north of the station would board the train platform leading to the train from the north side. Plaintiff requested $50,000 in damages for medical bills and lost wages.

On July 17, 2006, Metra moved pursuant to section 2-619 of the Code to dismiss plaintiff's complaint with prejudice for failing to state a cause of action upon which relief could be granted. Specifically, Metra argued that it was protected by the Tort Immunity Act for its discretionary decision not to put a stairwell or means of ingress on the north side of the 83rd Street platform.

The trial court granted Metra's motion to dismiss without prejudice and allowed plaintiff leave to file an amended complaint. Plaintiff subsequently filed an amended complaint, wherein

2

she alleged that Metra breached its duty of care to design and maintain a safe platform from which passengers could board the train.

Metra filed a section 2-619 motion to dismiss plaintiff's amended complaint. That motion, Metra alleged that the allegations in plaintiff's amended complaint were not substantively different from those in her original complaint, and thus the Tort Immunity Act again applied. The trial court entered and continued the motion, and granted plaintiff leave to respond.

Plaintiff filed a response, alleging that the Tort Immunity Act did not apply to Metra because Metra was acting as a common carrier.

In Metra's reply, it countered that the common carrier exception to the Tort Immunity Act did not apply to it in this lawsuit because it was not operating as a common carrier with regard to plaintiff at the time of the accident.

On April 24, 2007, a hearing was held. During the hearing, the trial court expressed that while Metra is a common carrier, such exception would only apply if plaintiff was getting on or off the train, not while she was attempting to get on the platform. The trial court granted Metra's section 2-619 motion to dismiss, and also granted plaintiff leave to file a second amended complaint.

In her second amended complaint, plaintiff realleged her negligence claim, but also added a count entitled "Negligence/Frequent Trespass Doctrine," in which she claimed that she and other commuters frequently trespassed the area between the platform and the public crossing in an effort to gain access to the platform. Therefore, plaintiff argued, Metra had a "duty to exercise

ordinary care for the frequent trespassing general public of which it was aware." Plaintiff also added a breach of contract of carriage count.

Metra then filed a motion to dismiss plaintiff's second amended complaint. That motion, Metra argued that the breach of contract claim was merely duplicative of her negligence claim; that the negligence claim was barred by section 2-201 of the Tort Immunity Act; and that the negligence/frequent trespasser claim was not a separate and distinct claim.

Plaintiff responded that there was an implied contract between plaintiff and Metra and that the Tort Immunity Act did not apply because Metra was a common carrier.

The trial court held a hearing on July 14, 2008. At such hearing, the court noted that the design of a platform was a discretionary act which was protected by the Tort Immunity Act. The trial court further found that the breach of contract claim should be dismissed because plaintiff was asking for tort damages on a contract theory, which was not allowable, and that there was no reason to anticipate that plaintiff would use the north entrance under a formal contract theory.

The trial court granted Metra's motion to dismiss plaintiff's second amended complaint and granted plaintiff leave to file a third amended complaint. Plaintiff failed to timely filed her third amended complaint, so on September 3, 2008, the trial court granted Metra's motion to dismiss with prejudice.

On October 9, 2008, plaintiff filed a motion for leave to vacate the dismissal order and file a third amended complaint. She also attached her proposed two-count amended complaint, which included claims for breach of contract of carriage and negligence. According to the breach of contract of carriage claim, plaintiff performed "all conditions precedent to the formation of a

valid contract of carriage," because she purchased the "10 Ride Ticket" and "present[ed] herself at the north end of the platform with the intention of boarding the Metra train." As for her negligence claim, plaintiff argued that Metra: failed to post adequate signs in order to deter commuters from using the north end of the platform; allowed the north side of the platform to deteriorate into an unsafe condition, which included allowing the "stairs on the north end which existed when Metra took over the station to fall into disrepair" and allowing the planking on the platform to deteriorate; allowed, permitted, and invited individuals to use the north "entrance" of the station; failed to post proper signs and barricades; and failed to provide an adequate ingress on the north side of the platform.

On October 29, 2008, the trial court held a hearing in which Metra orally objected to plaintiff's motion for leave to vacate and file a third amended complaint. Over such objections, the trial court vacated the dismissal order and allowed plaintiff leave to file her third amended complaint. However, the court held that its July 14, 2008, dismissal of the breach of contract claim would stand.

On December 2, 2008, Metra moved to dismiss the remaining negligence claim for the same reasons articulated in its earlier motions to dismiss. Metra claimed that the provisions of the Tort Immunity Act applied because it was a local public entity entitled to the protections of the statute.

Apparently plaintiff then filed a motion to strike Metra's affirmative defense of tort immunity (although we cannot find a copy of such motion in the record) because on January 8, 2009, the trial court held a hearing on "Plaintiff's motion to strike Metra's affirmative defense of

tort immunity." The trial court found that in light of <u>Smith v. Waukegan</u>, 231 Ill. 2d 111 (2008), a recent Illinois Supreme Court decision, there was no ambiguity in the Tort Immunity Act. The trial court found that section 101(b) made it clear that the Tort Immunity Act did not apply to a local public entity based on its operation as a common carrier. The trial court found that Metra was a local public entity based on its operation as a common carrier and that "there is no valid argument here that Metra was not operating as a common carrier." The trial court granted plaintiff's motion to strike Metra's first affirmative defenses.

On January 20, 2009, plaintiff was given leave to file her response to Metra's motion to dismiss plaintiff's third amended complaint *instanter*. Metra was given leave to field its reply on or about February 3, 2009. The hearing was set for February 18, 2009.

In plaintiff's response to Metra's motion to dismiss, she argued that Metra was not entitled to immunity because it was a common carrier. She also argued that a ruling in a circuit court case was relevant to her allegations.

On January 26, 2009, Metra filed its reply, arguing that the Illinois legislature only intended to prohibit the assertion of Tort Immunity Act defenses in those cases where the liability of the public entity was based on its status as a common carrier.

The trial court granted Metra's motion to dismiss plaintiff's third amended complaint with prejudice on February 18, 2009.[1] Plaintiff now appeals such grant.

---

[1] We cannot find a transcript to the February 18, 2009, hearing in the record. It is generally held that it is the burden of the appellant to present a record sufficiently complete to permit review of the error complained of, and doubts arising from the presentation of the record will be resolved against the appellant. <u>Griffiths v. Griffiths,</u> 127

## II. ANALYSIS

On appeal, plaintiff contends that (1) the trial court incorrectly ruled that the Tort Immunity Act applied to and barred her negligence claim and (2) the trial court incorrectly ruled that the Tory Immunity Act applied to and barred her breach of contract claim.

### 1. Standard of Review

This court reviews a trial court's order granting a motion to dismiss *de novo*. City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 364 (2004). A motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2006)) attacks the legal sufficiency of a complaint and seeks dismissal based upon certain defects or affirmative defenses. Beretta, 213 Ill. 2d at 364. In considering a motion to dismiss, the trial court accepts as true all well-pleaded facts and considers whether, viewed in a light most favorable to the plaintiff, those allegations are sufficient to state a claim upon which relief can be granted. Beretta, 213 Ill. 2d at 364.

### 2. Negligence

Plaintiff first claims that the trial court erred in granting Metra's motion to dismiss plaintiff's negligence count based on the affirmative matter of immunity pursuant to the Tort Immunity Act. Specifically, plaintiff contends that Metra was operating as a common carrier and therefore, was not entitled to protection from liability under the Tort Immunity Act. Metra responds that it was not acting as a common carrier at the time of the incident because plaintiff was not a passenger and therefore, it is immune from liability pursuant to the Tort Immunity Act.

---

Ill. App. 3d 126, 130 (1984).

The Tort Immunity Act protects "local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1 (West 2006). In 1986, the Tort Immunity Act was amended to include, within the definition of local public entity, "any not-for-profit corporation organized for the purpose of conducting public business." Pub. Act 84-1431, eff. November 25, 1986. This court has specifically found that the Tort Immunity Act applies to Metra because: "Metra is a not-for-profit corporation with no shareholders, funded with public funds from RTA and operates a commuter rail line in the public interest." Smith v. Northeast Illinois Regional Commuter R.R. Corp., 210 Ill. App. 3d 223, 227 (1991).

Section 3-102(a) of the Tort Immunity Act states that a local public entity has a duty of ordinary care to maintain its property but is entitled to the protections of the Act unless two requirements are met: (1) the injured party must have been both an intended and permitted user of the property; and the injury must arise from the condition of the property. 745 ILCS 10/3-102(a) (West 2006); Pence v. Northeast Illinois Regional Commuter R.R. Corp., 398 Ill. App. 3d 13, 18 (2010). In the case at bar, plaintiff was attempting to climb onto the platform at a location that did not have a staircase. She therefore was not an intended or permitted user of that property.

Moreover, section 2-201 of the Tort Immunity Act states that a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for any injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even if abused. 745 ILCS 10/2-201 (West 2006). Because it is a policy determination whether to put a staircase on a certain end of a train platform, Metra is immune

8

from liability under this section of the Tort Immunity Act as well.

However, plaintiff asserts that Metra is not entitled to the protections of the Tort Immunity Act because section 2-101 states: "Nothing in this Act affects the liability, if any, of a local public entity *** based on: *** b.) [o]peration as a common carrier." 745 ILCS 10/2-101 (West 2006). Plaintiff asserts that Metra is a common carrier and therefore cannot invoke section 3-102(a) of the Tort Immunity Act. Thus, the question before us is whether Metra was acting as a common carrier at the time of plaintiff's injury.

A common carrier must exercise the highest degree of care of its passengers. Skelton v. Chicago Transit Authority, 214 Ill. App. 3d 554, 572 (1991). " 'The passenger to whom the carrier owes the duty to exercise the highest degree of care is one who is in the act of boarding, is upon, or is in the act of alighting from, the carrier's vehicle.' " Pence, 398 Ill. App. 3d at 17, quoting Katamay v. Chicago Transit Authority, 53 Ill. 2d 27, 29 (1972). "In order to come within the definition of a passenger, it is not necessary for the individual to have come into physical contact with the train." Pence, 398 Ill. App. 3d at 17. " 'Illinois courts have long held that a contractual relationship between passenger and carrier begins when the passenger has presented himself at the proper place to be transported with the intention of becoming a passenger and is then either expressly or impliedly accepted by the carrier for transportation.' " Pence, 398 Ill. App. 3d at 17, quoting Skelton, 214 Ill. App. 3d at 572.

Here, plaintiff asserts she was a Metra passenger because she had purchased a "10 Ride" ticket and was attempting to climb on the north end of the 83rd Street platform with the intention of boarding a Metra train when she fell and was injured. "Although it is unnecessary for a person

9

to possess a ticket in order to be a passenger, possession of a ticket does not, by itself, create the passenger-carrier relationship." Pence, 398 Ill. App. 3d at 17, citing Skelton, 214 Ill. App. 3d at 572. We find Pence to be instructive in this case.

In Pence, the plaintiff had purchased a monthly pass that he could use at any time. While he walking from the Metra-owned parking lot to the train station, he walked diagonally across the street and in the middle of the street, where the railroad tracks intersect 147th Street, the plaintiff tripped on a bolt protruding from a railroad tie, injuring himself. The court found that although the bolt was part of Metra's track system, it could not be said that the plaintiff was in the "proper place for transportation at the time of his fall." Pence, 398 Ill. App. 3d at 18. The court further found, quoting our supreme court, that " '[s]o long as a person merely intends to be carried but has not reached any place provided for passengers or used for their accommodation he is not a passenger.' " Pence, 398 Ill. App. 3d at 18, quoting Chicago & Eastern Illinois R.R. Co. v. Jennings, 190 Ill. 478, 487 (1901). The court specifically found that "Metra was not operating as a common carrier with respect to Pence at the time of his fall since he was not a passenger." Pence, 398 Ill. App. 3d at 19.

Pursuant to Pence, we find that while plaintiff may have intended to be a passenger on a Metra train, she had not yet become one at the time of her fall, since she was only attempting to board the platform and had not yet presented herself in a proper place to be transported, and we cannot say that Metra had accepted her for transportation. As our supreme court articulated in Jennings, "the circumstances must be such that the company will understand that such a person is a passenger in its care and entitled to its protection." Jennings, 190 Ill. at 486. Accordingly,

10

plaintiff was not a passenger at the time of her injury and therefore Metra was not acting as a common carrier at such time. Thus, Metra properly asserted Tort Immunity Act protection.

As noted in Pence, "Illinois courts have interpreted section 2-101 of the Tort Immunity Act, not as an exclusion from the Act for common carriers (other than the Chicago Transit Authority, which is expressly excluded), but as a preservation of the standard of care imposed upon a common carrier as to its passengers." Pence, 398 Ill. App. 3d at 19; see also Cooper v. Bi-State Development Agency, 158 Ill. App. 3d 19, 25 (1987). Accordingly, because we have found plaintiff in our case not to be a passenger, it follows that Metra was not acting as a common carrier at the time of her injury and thus the trial court properly granted Metra's motion to dismiss plaintiff's negligence claim based on the application of the Tort Immunity Act.

### 3. Breach of Contract of Carriage

Plaintiff's second argument is that the trial court improperly dismissed her breach of contract of carriage claim as barred by the Tort Immunity Act. Metra responds that this argument is waived, that plaintiff misunderstood the basis for dismissal of this argument, and that in any event there was no contract between plaintiff and Metra at the time of her injury. We agree with Metra.

Illinois Supreme Court Rule 341 requires that the argument section of an appellant's brief include "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 210 Ill. 2d R. 341(h)(7). Further, this court has noted that "cursory argument does not meet the standard of Illinois Supreme Court

11

Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), which requires plaintiff to put forth reasons for her argument." Wilbourn v. Cavalenes, 398 Ill. App. 3d 837, 852 (2010). "We need not sift through the record to find support for plaintiff's contention." Wilbourn, 398 Ill. App. 3d at 852.

In the case at bar, plaintiff merely includes two cursory paragraphs addressing her breach of contract of carriage claim. She claims that the trial court simply refused to entertain her claim because the count was barred by the Tort Immunity Act. Plaintiff then states that this is "contrary to the express provision of 745 ILCS 10/2-101(a) and the long standing law of this state. See generally Burns v. Regional Transportation Authority, 112 Ill. App. 3d 466, 468-470 (1982)." We cannot say that this constitutes development of an argument. Plaintiff does not give reasons for why the trial court's decision was contrary to the Tort Immunity Act, nor does she explain what the long-standing law of this state is. Accordingly, as a result of plaintiff's failure to develop her argument, any such contention is waived.

Even if we were to review this issue, we would nevertheless find that the trial court properly dismissed plaintiff's breach of contract of carriage count. "It is well established that a passenger enters a contract for carriage with a carrier when the passenger offers himself to ride on the carrier's transportation and the carrier expressly or impliedly accepts by carrying the passenger to the agreed-upon destination for a designated fare." Howard v. Chicago Transit Authority, No. 1-08-3177, slip op. at 5 (June 7, 2010), citing O'Donnell v. Chicago & Northwestern Ry. Co., 106 Ill. App. 287 (1903). Plaintiff claims that she met the conditions precedent to the formation of a valid contract of carriage because she purchased her "10 Ride Ticket" and presented herself at the north end of the platform with the intention of boarding the

train.  However, as we found above, plaintiff was not a passenger at the time of her incident because she was not in a proper place to be transported, and Metra had not accepted her for transportation.  Thus, no contract existed between the parties, and thus no breach of contract occurred.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

HOWSE, and LAVIN, JJ., concur.