2019 IL App (1st) 180853

No. 1-18-0853

Fourth Division
May 23, 2019

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| CHRISTINA EPPLE, | ) | |
| | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 16 L 5597 |
| | ) | |
| LQ MANAGEMENT, LLC, | ) | The Honorable |
| | ) | John H. Ehrlich, |
| Defendant-Appellee. | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1   The instant appeal arises from injuries sustained by plaintiff Christina Epple when she fell while walking through a walkway owned by defendant LQ Management, LLC. Defendant filed a motion for summary judgment, claiming that it owed no duty to plaintiff, as she was a trespasser passing through the area as a shortcut to her office building. In response, plaintiff claimed that several exceptions to the default no-duty rule applied and that, under these exceptions, defendant owed her a duty to exercise ordinary care for her safety. The trial court granted summary judgment in defendant's favor, based on the trial

court's conclusion that plaintiff was a trespasser, and plaintiff appeals. For the reasons that follow, we reverse.

¶ 2                                                    BACKGROUND

¶ 3        On June 6, 2016, plaintiff filed a complaint against defendant, alleging that, on July 9, 2014, she was a lawful pedestrian in the driveway area of the La Quinta Inn & Suites located at 1 South Franklin Street in Chicago and that defendant owed her a duty to maintain the property in a reasonably safe condition. However, on July 9 "and for a long time prior thereto,"[1] the driveway area was in a neglected, broken state, which created a height differential that posed a tripping hazard to those lawfully walking in the area. Plaintiff alleged that defendant was negligent in (1) improperly maintaining the premises, (2) failing to make a reasonable inspection of the driveway area, (3) permitting the driveway area to remain in a broken and cracked condition, (4) failing to repair the driveway area, (5) failing to warn pedestrians to refrain from walking in the area, and (6) failing to barricade the driveway area. Plaintiff alleged that, as a result of defendant's negligent acts, she tripped and "violently" fell to the ground, sustaining injuries.

¶ 4        On November 13, 2017, defendant filed a motion for summary judgment, claiming that plaintiff was a trespasser at the time of her fall and that defendant did not breach any duty to trespassers in the maintenance of its property. Defendant claimed that plaintiff was cutting through its property on her way to her place of employment and was not a guest or employee of the hotel. Defendant further claimed that the driveway area was not intended for use by pedestrians but that pedestrian use was unavoidable at certain high-traffic times. Defendant

_____

[1]Plaintiff does not allege exactly how long the area in question had been in this state, nor was she asked any questions on the issue during her deposition. However, summary judgment was based solely on issues of trespasser liability, and notice and knowledge are not at issue on appeal.

argued that it owed only a duty to avoid acting in a willful and wanton manner and that there was no evidence that defendant behaved in such a manner.

¶ 5        Attached to the motion for summary judgment was the transcript from plaintiff's discovery deposition. Plaintiff testified that, on July 9, 2014, she was working at the Chicago office of her employer, which was located at 230 West Monroe Street. She would regularly drive to work and park at the Poetry garage, which was a two-minute to three-minute walk from her office. On July 9, she ran into Mike Porter, a coworker, in the garage at approximately 8:45 a.m., and they left the parking garage through its Madison Street exit. They then turned down what she termed the "driveway" or "walkway" alongside defendant's hotel next door, which led into an exterior "atrium" area to Arcade Place. Plaintiff testified that this was a "[f]airly usual" route that she used to travel to work; the route identified by plaintiff on a map shows that she would walk down Madison Street from the garage to the walkway, walk down the walkway to Arcade Place, turn west onto Arcade Place to Franklin Street, then turn south onto Franklin Street to reach her office. Plaintiff described the day as "dry [and] sunny" and testified that she and Porter were walking at a normal pace and not hurrying. She observed "more than five" other people in the walkway ahead of her and testified that "[i]t was a fairly busy time of the morning." Plaintiff stepped onto the curb, and the uneven pavement caused her foot to roll and she fell; plaintiff recalled that there were areas of the walkway in which there were pieces of cement and brick missing and other areas that appeared to have been patched. When plaintiff fell, she was near a vestibule, in which one of defendant's employees was standing. However, plaintiff did not speak with any of defendant's employees either before or after her fall. After her injury, plaintiff no longer took that route to work but instead "took the long way."

¶ 6    Plaintiff testified that the walkway was "clearly pedestrian" and had "all kinds [of] markings," such as "Pedway" and "no vehicles allowed." Plaintiff further testified that in the mornings, "it looks like a train station when the train door opens" due to the large amount of people using the walkway. Plaintiff described the area as "just another artery. It's a corridor between Madison and Monroe which would be the other side of our office building."

¶ 7    Also attached to the motion for summary judgment was the transcript from the discovery deposition of Gary Platt, the general manager of the Franklin Street location of defendant's hotel. Platt testified that immediately to the east of the hotel was the "poetry garage," which was a parking garage that was open to the public; however, there was no pathway or thoroughfare that would lead from the hotel to the parking garage. Platt testified that there was a "side entrance" to the hotel from Madison Street, which contained a driveway for vehicular traffic. Platt testified that it was "not the intention" that the driveway be used by pedestrians and that "[t]he intention is that it is a driveway for vehicles." However, Platt testified that pedestrians did use the driveway and witnessed "maybe a hundred a day or more" doing so during the time period of plaintiff's fall. Platt testified that he was not aware of any signs indicating that pedestrians were not permitted to walk in the area.

¶ 8    Platt testified that the atrium area at the end of the driveway was referred to as the "compass" and served as a turnaround area for vehicles. However, he observed pedestrians walking through the area "[e]very day." As with the driveway area, Platt was not aware of any signs indicating that pedestrians were not permitted to walk in the area. Platt testified that he informed individuals "[e]very day" that they were not permitted to be on the premises, such as "[s]mokers, people who may be homeless that are looking for a place to sleep, things

4

like that." Platt testified that noncustomers should not be passing through the driveway area, but that he had no way of knowing if someone was a customer until they entered the hotel.

¶ 9        Platt testified that he walked past the area regularly, at least once a day. Platt further testified that there would be a minimum of four "engineering rounds" per day, in which inspections of the area would be conducted, in addition to Platt, his assistant, and his lobby concierges making inspections. Such inspections would look for "[a]ny defect in the pavement, debris laying around, individuals who are not supposed to be in that area, that sort of thing." Platt did not receive any complaints about the condition of the driveway or compass areas prior to plaintiff's fall, nor had he ever received any reports of anyone falling or slipping in the area.

¶ 10       Finally, also attached to the motion for summary judgment were five photographs that purported to depict the area at issue. While the copies of the photographs contained in the record on appeal are not entirely clear, they are sufficiently clear to depict the general layout of the area.[2] From the photographs, it appears that the "driveway" is a covered area, paved with bricks and illuminated with overhead lighting. There is an arrow on the ground, pointing toward the "atrium" area. On the west side of the driveway, where the hotel is located, there is a sign stating "La Quinta Inn & Suites"; the copies of the photographs are too dark to show any other signage that may be present. The "atrium" area contains a large brick circle on the ground, with a compass embedded in the brick. From the photographs, it appears that there are buildings lining the north and west sides of the atrium; the south side is the driveway, and the east side does not appear in the photographs.

---

[2]One photograph purports to depict the general area of the fall, but is not of sufficient quality to show any detail of the area. These photographs were also not taken on the day of the fall, and therefore do not adequately portray the condition on the date of the fall.

¶ 11    On December 15, 2017, plaintiff filed a response to defendant's motion for summary judgment, arguing that there was a question of fact as to whether either the "permissive use exception" or "frequent trespass doctrine" applied. Plaintiff argued that the evidence showed there was a question of fact as to whether defendant knew that pedestrians habitually used the walkway as a shortcut and permitted pedestrians to use the walkway in that manner. Under these exceptions, plaintiff argued that defendant owed her a duty to maintain the premises in a reasonably safe condition.

¶ 12    On January 19, 2018, the trial court entered an order, granting summary judgment in defendant's favor "[f]or the reasons stated on the record"[3] and finding that its order was final and appealable. Plaintiff filed a motion to reconsider, which was denied on March 27, 2018. This appeal follows.

¶ 13                                    ANALYSIS

¶ 14    On appeal, plaintiff argues that the trial court erred in granting summary judgment in defendant's favor because defendant owed her a duty under either the "permitted use exception" or the "frequent trespasser doctrine." A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo*

---

[3]There is no report of proceedings from this hearing contained in the record on appeal.

consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 15     "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 16     Under the theory of premises liability, an owner or occupier of land owes a duty of reasonable care under the circumstances to all entrants upon the premises except to trespassers. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 24. A trespasser is "one who enters upon the premises of another with neither permission nor invitation and intrudes for some purpose of his own, or at his convenience, or merely as an idler." *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 228 (1996). In the case at bar, plaintiff does not

dispute that she falls within this definition with respect to cutting through defendant's driveway to reach her office building.

¶ 17    At common law, the general rule is that a landowner is under no duty to maintain the premises for the safety of trespassers. *Choate*, 2012 IL 112948, ¶ 25. Indeed, the landowner owes no duty of reasonable care to trespassers, except to refrain from willfully and wantonly injuring them. *Choate*, 2012 IL 112948, ¶ 25. "The rationale for this rule is that 'in a civilization based on private ownership, it is considered a socially desirable policy to permit a person use of his land in his own way, without the burden of watching for and protecting those who come there without permission or right.' " *Rhodes*, 172 Ill. 2d at 229 (quoting *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 122 (1995)). However, courts have created a number of exceptions to the general rule limiting the landowner's duty to trespassers. *Choate*, 2012 IL 112948, ¶ 27; *Rhodes*, 172 Ill. 2d at 229.

¶ 18    Our supreme court delineated these exceptions in *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 446-47 (1992). First, a landowner must use ordinary care to avoid injury to a trespasser who has been discovered in a place of danger on the premises. *Lee*, 152 Ill. 2d at 446. Next, courts have found that a landowner owes a duty of ordinary care to those who are frequent trespassers in a limited area where the landowner knows or should know of their constant intrusion. *Lee*, 152 Ill. 2d at 446-47. Additionally, an exception has been recognized where small children foreseeably intrude on the premises and are incapable of appreciating the risk involved. *Lee*, 152 Ill. 2d at 447. Finally, a landowner must exercise reasonable care to warn a trespasser of an artificial condition that involves a risk of death or severe bodily harm where the landowner has reason to know of the trespasser's presence and the landowner

has reason to believe that the trespasser will not discover the condition or realize the risk involved. *Lee*, 152 Ill. 2d at 447-48 (adopting Restatement (Second) of Torts § 337 (1965)).

¶ 19    In the case at bar, plaintiff argues that there are two exceptions at issue: the "permissive use exception" and the "frequent trespass exception." However, a close analysis of the applicable case law demonstrates that these terms are simply two ways of describing the second exception set forth above: a duty of ordinary care to those who are frequent trespassers in a limited area where the landowner knows or should know of their constant intrusion. *Lee*, 152 Ill. 2d at 446-47. This exception is sometimes referred to as the "permissive use" exception. *Rodriguez v. Norfolk & Western Ry. Co.*, 228 Ill. App. 3d 1024, 1039 (1992). However, it is also sometimes referred to as the "frequent trespass" exception. *Nelson v. Northeast Illinois Regional Commuter R.R. Corp.*, 364 Ill. App. 3d 181, 186 (2006). It is even sometimes referred to as the "permissive use/frequent trespass exception." *McKinnon v. Northeast Illinois Regional Commuter R.R. Corp.*, 263 Ill. App. 3d 774, 778 (1994). Instead, what plaintiff refers to as the "frequent trespass" exception is more properly characterized as the "place of danger" exception, wherein a landowner must use ordinary care to avoid injury to a trespasser who has been discovered in a place of danger on the premises. *Lee*, 152 Ill. 2d at 446; see *Miller v. General Motors Corp.*, 207 Ill. App. 3d 148, 158 (1990); *Beverly Bank v. Penn Central Co.*, 21 Ill. App. 3d 77, 81 (1974). Accordingly, in our discussion, we refer to plaintiff's two arguments as concerning the "permissive use exception" and the "place of danger exception."

¶ 20    We consider first plaintiff's arguments concerning the permissive use exception. As noted, a landowner owes a duty of ordinary care to those who are frequent trespassers in a limited area where the landowner knows or should know of their constant intrusion. *Lee*, 152

Ill. 2d at 446-47. Under this exception, a landowner may owe a duty of care to trespassers, other than to refrain from willful and wanton conduct, when the landowner permits regular use of his land for travel. *Rodriguez* , 228 Ill. App. 3d at 1040. "Liability has been extended in such cases because the landowner's continued toleration of the trespass amounts to permission to make use of the land, so that the plaintiff then is not a trespasser but becomes a licensee." *Rodriguez*, 228 Ill. App. 3d at 1040.

> "However, in order for a possessor of land to be subject to liability under this rule, it is necessary that the possessor know, or from facts within his knowledge should know, that persons constantly and persistently intrude upon some particular place on the land. [Citation.] It is not enough that he know or have reason to know that persons persistently roam at large over his land. [Citation.]" *Benamon v. Soo Line R.R. Co.*, 294 Ill. App. 3d 85, 92-93 (1997).

¶ 21     In the case at bar, there is no dispute that a number of pedestrians used the driveway area daily; both plaintiff and Platt testified that it was routinely used heavily during commuting hours, with Platt estimating that he witnessed "maybe a hundred a day or more" using the driveway. Platt also testified that there were no signs or other barriers informing pedestrians that the area was only for use of hotel guests. Platt testified that he asked certain pedestrians to leave the area, such as "[s]mokers, people who may be homeless that are looking for a place to sleep, things like that," but did not testify that he asked people using the area as a shortcut to stop doing so. Plaintiff also testified that at the time she fell, there was a hotel employee in view, but did not testify that he ordered her to leave or told her that she could not use the area. Plaintiff further testified that there was signage on the property indicating that pedestrians were welcome to use it. Accordingly, there is evidence to suggest that

defendant tolerated the use of the driveway area to such an extent that the permissive use exception should apply and the trial court erred by finding that plaintiff was a trespasser as a matter of law. See, *e.g.*, *McKinnon*, 263 Ill. App. 3d at 779 (reversing the trial court's dismissal where complaint alleged that there was a particular right-of-way extending through a densely populated village that was easily accessible to the public and that the defendant permitted the use of the right-of-way to the extent that it became the custom of persons to do so).

¶ 22    Defendant argues that the fact that so many pedestrians used the driveway does not suggest that its tolerance of that use was tantamount to consent, pointing to *Skoczylas v. Ballis*, 191 Ill. App. 3d 1 (1989), in support of its claim. In that case, the plaintiff was injured when crossing a parking lot owned by the defendant in connection with his restaurant business. *Skoczylas*, 191 Ill. App. 3d at 2. The parking lot was bordered by two streets; there were several business establishments located near the parking lot, and it was common practice for individuals going to those establishments to park on the street and cross through the parking lot to reach the other businesses. *Skoczylas*, 191 Ill. App. 3d at 3. The plaintiff was doing so one day when she tripped on a "plastic banding loop" and injured herself. *Skoczylas*, 191 Ill. App. 3d at 3. The plaintiff filed suit, claiming that the defendant had not exercised reasonable care in maintaining the parking lot. *Skoczylas*, 191 Ill. App. 3d at 3.

¶ 23    On appeal, the appellate court affirmed the trial court's dismissal of the plaintiff's complaint, finding that the permissive use exception did not apply. The court noted that a landowner's failure to object to the entry may constitute consent if the landowner knows of the person's intention to enter and has reason to believe that an objection to the entry would

11

be effective in preventing it. *Skoczylas*, 191 Ill. App. 3d at 5. However, the court further noted:

> " '[T]he fact that the possessor knows of the intention to enter and does not prevent it is not necessarily a manifestation of consent, and therefore is not necessarily permission. A failure to take burdensome and expensive precautions against the intrusion manifests only an unwillingness to go to the trouble and expense of preventing others from trespassing on the land, and indicates only toleration of the practically unavoidable, rather than consent to the entry as licensee. Even a failure to post a notice warning the public not to trespass cannot reasonably be construed as an expression of consent to the intrusion of persons who habitually and notoriously disregard such notices.' " *Skoczylas*, 191 Ill. App. 3d at 5 (quoting Restatement (Second) of Torts § 330, cmt. c, at 173 (1965)).

¶ 24    Applying the law to the facts before it, the court found that the defendant's tolerance of the trespassing was not tantamount to permission:

> "The defendant owns and operates the parking lot for the use of customers of his restaurant and not for the convenience of the public at large. It was necessary for the defendant to maintain his lot in a manner which would allow free access during normal business hours to those persons intending to patronize his restaurant. Under these circumstances, we do not believe that the plaintiff's allegation that the defendant 'habitually acquiesced' in the public's common practice of crossing his parking lot to reach other business establishments is sufficient to establish the type of implied consent or permission necessary to give her the status of a licensee. The complaint states no facts to support the plaintiff's conclusion of habitual acquiescence

other than that the defendant knew it was common for persons to use his lot as a pathway to the other businesses. Given the nature of the premises in question and the defendant's need to allow free access to his customers, we do not believe that the plaintiff's allegations were sufficient to establish that she held the status of licensee rather than trespasser. At most, they establish the defendant's toleration of the practically unavoidable rather than consent to the entry." *Skoczylas*, 191 Ill. App. 3d at 5-6.

¶ 25    In the case at bar, defendant claims that the instant case is "almost identical" to *Skoczylas* with respect to plaintiff's purpose for being on the premises and her arguments for classifying her as a licensee. However, while it is true that both cases involved crossing a business' property to reach a different business, it is there that the similarities end. Critical to the *Skoczylas* court's holding was "the nature of the premises in question and the defendant's need to allow free access to his customers." *Skoczylas*, 191 Ill. App. 3d at 6. The premises in that case consisted of an open parking lot, bordered on two sides by public streets, which needed to remain open so that the defendant's customers could access the restaurant. Accordingly, it would be almost impossible for the defendant to take measures to prevent trespassers from crossing through the lot, and such measures would be burdensome and expensive.

¶ 26    By contrast, the premises at issue in the case at bar consist of a relatively narrow driveway area, located between two buildings, which Platt characterized as a "side entrance" to the hotel. Platt testified that this driveway led to the atrium area, which was intended to serve as a turnaround area for vehicles, and testified that there was no thoroughfare or other connection between the driveway and the parking garage next door. Thus, the case at bar

involves a much more limited area, which is bounded by buildings as opposed to open streets, meaning that the deterrence of trespassers would involve a completely different calculation than was present in *Skoczylas*. For instance, something as simple as signage at each end of the driveway indicating "property for use of hotel guests only" would make clear that pedestrians were not permitted to cut through the driveway. Accordingly, we cannot agree with defendant that *Skoczylas* suggests that plaintiff was a trespasser as a matter of law.

¶ 27 Additionally, there is evidence in the record to suggest that defendant did more than passively tolerate pedestrians. Plaintiff testified that there was signage in the driveway area stating "Pedway" and "no vehicles allowed." Defendant argues that this evidence has been "refuted" through Platt's testimony and through the photographs of the area, which do not show any such signage. However, Platt was never asked about the presence of such signs—Platt testified only that there was no signage either in the driveway or in the atrium area informing pedestrians that they were prohibited from using the area. Moreover, even if Platt's testimony could be interpreted in the way defendant claims, " '[t]he purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager*, 328 Ill. App. 3d at 708 (quoting *Luu*, 323 Ill. App. 3d at 952). If plaintiff testifies to one set of facts, while Platt testifies to a contradictory set of facts, that presents a quintessential question of fact which must be resolved by a trier of fact, not on summary judgment.

¶ 28 With respect to the photographs, the quality of the copies included in the record on appeal makes it impossible to determine if there is any signage depicted on the walls (other than the illuminated "La Quinta" sign). Even if better-quality photographs would show such detail, the presence or absence of signs in the photographs would not prove dispositive at this stage.

14

First, plaintiff claims that the photographs do not depict the entire area. Additionally, defendant's discovery answers indicated that the photographs of the area were taken in September 2014, two months after plaintiff's fall.[4] Thus, we cannot find that either Platt's testimony or the photographs "refute" plaintiff's testimony to such an extent that there remains no triable issue of fact on the matter.

¶ 29        The existence of a duty under a particular set of facts is a question of law for the court to decide. *Choate*, 2012 IL 112948, ¶ 22. However, "[w]here the facts surrounding the issue of a plaintiff's status on land are disputed, or different inferences may be drawn from undisputed facts, the plaintiff's status is a question of fact to be resolved by the jury." *Rhodes*, 172 Ill. 2d at 241. In the case at bar, there remain questions of fact concerning whether defendant permitted the use of its driveway by pedestrians to such an extent that those pedestrians became licensees under the permissive use exception. Accordingly, summary judgment should not have been granted in defendant's favor on the issue. As we have determined the grant of summary judgment must be reversed, we have no need to consider plaintiff's arguments concerning the "place of danger" exception.

¶ 30                                CONCLUSION

¶ 31        For the reasons set forth above, there is a question of fact as to whether defendant's tolerance of pedestrian use of its driveway was tantamount to consent to use the driveway for that purpose under the permissive use exception. Accordingly, summary judgment should not have been granted on the issue.

¶ 32        Reversed and remanded.

---

[4]We note that, while the answers to interrogatories stated that the photos were taken by Platt in September 2014, he denied taking the photographs during his deposition.