2022 IL App (1st) 210929

First District
Fourth Division
June 16, 2022

No. 1-21-0929

|  |  |  |
|---|---|---|
| JELENA BABIC, Individually and as Mother and Next Friend of Denis Hodzic, a Minor, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | No. 19 L 002834 |
| v. | ) ) | The Honorable |
| THE VILLAGE OF LINCOLNWOOD, a Municipal Corporation, | ) ) | Christopher E. Lawler, Judge Presiding. |
| Defendant-Appellee. | ) ) ) | |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion. Justices Rochford and Martin concurred in the judgment and opinion.

## OPINION

¶ 1     Denis Hodzic (Denis), a sixth-grade boy,[1] was riding his bicycle on a residential street near his home in Lincolnwood when he encountered a sinkhole, causing his bicycle to flip and breaking his wrist in the process. Plaintiff Jelena[2] Babic (plaintiff) filed a lawsuit against the defendant Village of Lincolnwood (Village), seeking damages for Denis's injuries. The Village filed a motion for summary judgment, claiming that Denis was not an intended user of the street on which he was injured and, therefore, the Village owed him no duty of reasonable care.

---

[1] Denis's birthdate does not appear in the record on appeal. At the time of his deposition, he was 13 years old, so he would have been either 11 or 12 at the time of the accident at issue in the instant appeal.

[2] We note that plaintiff's first name is spelled several different ways throughout the record on appeal. We use the spelling she provided during her deposition.

The circuit court granted the motion for summary judgment, and plaintiff appeals. For the reasons set forth below, we affirm.

¶ 2                                    BACKGROUND

¶ 3        The facts in the instant case are largely undisputed. On June 4, 2018, Denis was riding a bicycle southbound on Kilpatrick Avenue near the intersection of Kilpatrick Avenue and Estes Avenue. His family had recently moved into the neighborhood, and Denis was riding his bicycle to familiarize himself with the area. When he approached the intersection, the front tire of his bicycle encountered a sinkhole in the street and he fell from his bicycle; in his deposition, Denis estimated that the sinkhole was oval-shaped and approximately one foot wide, one foot long, and two feet deep.[3] There is no dispute that Kilpatrick Avenue does not include any bicycle lanes or signage, but Denis testified in his deposition that none of the streets he rode in the area had sidewalks that were suitable for riding.[4] The fall resulted in Denis breaking his wrist, which required surgery to correct.

¶ 4        On March 15, 2019, plaintiff filed a complaint against the Village, alleging that the Village had negligently maintained the street, causing Denis's injuries. The Village filed an answer and affirmative defenses, alleging that it owed no duty to Denis under section 3-102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-102 (West 2018)).

---

[3] The sinkhole was filled within two days of the accident, and the only photographs contained in the record on appeal display an already-patched roadway.

[4] Photographs contained in the record on appeal show that there appears to be a sidewalk on the west side of Kilpatrick Avenue north of Estes Avenue, but the sidewalk ends at the intersection of Kilpatrick Avenue and Estes Avenue. There also appears to be narrow concrete strips running directly along the curbside of Kilpatrick and Estes Avenues, which the Village's chief of police termed "coachwalks."

¶ 5    The parties engaged in discovery, after which the Village filed a motion for summary judgment. The Village argued that section 3-102 of the Tort Immunity Act expressly limited a municipality's duty of care to maintain property for uses that were both intended and permitted and that a bicyclist such as Denis was not an intended user of a municipal street. Consequently, the Village claimed that it owed no duty to Denis. In response, plaintiff claimed that there was a question of fact as to whether Denis was an intended user of the street and further claimed that section 3-102 should not be interpreted to bar Denis's claim.

¶ 6    On July 8, 2021, the circuit court granted the Village's motion for summary judgment, finding that there was no evidence that the Village intended for bicyclists to use the portion of the road where Denis encountered the sinkhole. As Denis was not both a permitted and intended user of the road, the circuit court found that the Village owed him no duty of care and, consequently, granted summary judgment in favor of the Village. Plaintiff timely filed a notice of appeal, and this appeal follows.

¶ 7                                ANALYSIS

¶ 8    On appeal, plaintiff contends that the circuit court erred in granting summary judgment in favor of the Village, arguing that section 3-102 of the Tort Immunity Act does not bar Denis's claims. A circuit court is permitted to grant summary judgment only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). The circuit court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a circuit court's

decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 9      Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Id.* However, mere speculation, conjecture, or guess is insufficient to withstand summary judgment. *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively demonstrating that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (citing *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the circuit court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 10     In this case, the circuit court's grant of summary judgment was based on its determination that the Village owed no duty to Denis based on section 3-102 of the Tort Immunity Act. To properly state a cause of action for negligence, a plaintiff must establish that the defendant owed a duty of care, the defendant breached that duty, and the plaintiff suffered an injury proximately caused by the breach. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 421 (1992). The question of whether a duty of care exists is a question of law to be determined by the court. *Id.*

¶ 11    Local public entities have a common-law duty to maintain public property in a reasonably safe condition. *Monson v. City of Danville*, 2018 IL 122486, ¶ 24. This duty has been codified in section 3-102(a) of the Tort Immunity Act, which limits a local public entity's duty to maintain its property. *Id.*; *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 158 (1995). Section 3-102(a) provides that a local public entity "has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3-102(a) (West 2018). Thus, a municipality has a duty under section 3-102(a) only to users who are both intended and permitted users of the property under the control of the municipality. *Vaughn*, 166 Ill. 2d at 160; *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998).

¶ 12    While plaintiff acknowledges that this is the current state of the law, she asks us to "modify the interpretation" of section 3-102(a) to reflect that a municipality has a duty to users who are *either* intended *or* permitted users, not both, where there is a condition on its property that is dangerous for ordinary travel. This we cannot do, however, regardless of the merits of any of plaintiff's arguments. It is well-settled that, when the supreme court has declared law on any point, only that court may modify or overrule its previous decisions, and all lower courts are bound to follow that precedent. See, *e.g.*, *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 86; *Doyle v. Hood*, 2018 IL App (2d) 171041, ¶ 35; *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 366 Ill. App. 3d 730, 734 (2006); *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551 (1983). Accordingly, in order for the Village to have had a duty to Denis in the present case, Denis must have been both an intended and a permitted user of the road on which

5

he was injured, and we need not discuss plaintiff's arguments suggesting a different interpretation of section 3-102(a).

¶ 13      Our supreme court has recognized that an intended user of property is, by definition, also a permitted user; however, the converse is not always true, as a permitted user of property is not necessarily an intended user. *Boub*, 183 Ill. 2d at 524. In order to determine the intended use of the property at issue, a court looks to the nature of the property itself. *Wojdyla*, 148 Ill. 2d at 426; *Boub*, 183 Ill. 2d at 525. Moreover, in determining intent, it is the intent of the municipality that is at issue, not the user. *Boub*, 183 Ill. 2d at 525.

¶ 14      In *Boub*, our supreme court considered whether a bicyclist may be considered an intended user of a road and explained that, to determine the municipality's intent, "it is necessary to look at pavement markings, signs, and other physical manifestations of the intended use of the property." *Id.* at 528. Thus, a bicyclist was considered to be an intended user in *Cole v. City of East Peoria*, 201 Ill. App. 3d 756, 761 (1990), where a white line painted four feet from the curb indicated an intent that the area be used by bicyclists and pedestrians, not simply those driving automobiles. Similarly, in *Alave v. City of Chicago*, 2022 IL App (1st) 210812, this court recently found that the presence of Divvy bicycle rental stations indicated that the city intended for nearby streets to be used by bicyclists. By contrast, where there were no markings, road signs, or other affirmative indications of intent, courts have found that bicyclists are not intended users of public roadways. See *Boub*, 183 Ill. 2d at 535-36; *Latimer v. Chicago Park District*, 323 Ill. App. 3d 466, 473 (2001); *Berz v. City of Evanston*, 2013 IL App (1st) 123763, ¶ 14. We note that plaintiff argues that the *Boub* court's holding that bicyclists generally are not intended users of roads violates bicyclists' due process rights by depriving them of their liberty interests in the municipality's duty to them. Plaintiff, however, did not raise this

argument below, so consequently cannot raise it for the first time on appeal. See *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789, ¶ 41 (issues not raised in the circuit court may not be raised for the first time on appeal, including constitutional issues). More importantly, as noted, we are bound to follow the supreme court's precedent, and therefore, we need not address this argument further.

¶ 15     Here, there is no dispute that the area in question did not have any road markings, signs, or other indications that bicyclists were intended to use the roadway. Consequently, in the absence of such affirmative manifestations of intent, the circuit court properly found that Denis was only a permitted—not intended—user of the street and, therefore, the Village did not owe him a duty under section 3-102(a) of the Tort Immunity Act. See *Boub*, 183 Ill. 2d at 536.

¶ 16     Plaintiff proffers several factors which she contends establishes that bicyclists were intended users of the Village's streets, none of which we find persuasive. First, plaintiff claims that the Village's municipal ordinances provide that bicyclists are intended users of the area of the streets near curbs.[5] A municipality's ordinances may be used to determine who are intended users of its property. See, *e.g.*, *Latimer*, 323 Ill. App. 3d at 470-72 (discussing Chicago Municipal Code); *Brooks v. City of Peoria*, 305 Ill. App. 3d 806, 810-12 (1999) (discussing City of Peoria Code). Here, article 3 of the Village's Traffic Code addresses bicyclists. See Lincolnwood Municipal Code § 7-3-1 *et seq.* (adopted Dec. 6, 2011). However, other than bicycle paths, the provisions of article 3 do not specifically identify areas in which bicyclists are intended to ride. Unlike other municipal ordinances, the provisions of article 3 do not

---

[5] We note that plaintiff raises this argument for the first time in her reply brief, so it has been forfeited on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued in the appellant's brief are forfeited and shall not be raised in the reply brief, at oral argument, or in a petition for rehearing); *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 253 (2010) (points not argued in the appellant's brief are forfeited). However, since this argument intertwines with other issues properly raised by plaintiff, we choose to consider it, especially since the Village addresses the argument in its own brief.

prohibit the riding of bicycles on sidewalks and, indeed, anticipate that bicyclists may ride on sidewalks by providing that when they do, they must yield the right-of-way to pedestrians and give audible signals before passing them. Compare Lincolnwood Municipal Code § 7-3-15 (adopted Dec. 6, 2011), with Chicago Municipal Code § 9-52-020 (amended Apr. 10, 2019) (prohibiting persons aged 12 or older from riding on sidewalks). The provisions of article 3 also anticipate that bicyclists may ride on the streets, provided that bicyclists ride "as near to the right-hand side of the street or roadway as practicable" when doing so (Lincolnwood Municipal Code § 7-3-9(A) (adopted Dec. 6, 2011)), and, furthermore, the bicyclists riding on the streets are subject to the same rights and duties as drivers of motor vehicles (*id*. § 7-3-6). The provisions of article 3, however, additionally provide that "[w]henever a usable path for bicycles has been provided adjacent to a street or roadway, bicycle riders shall use such path and shall not use the street or roadway." *Id*. § 7-3-9(C). Thus, under the Village's ordinances, bicyclists (1) must use a "usable path for bicycles" when available and otherwise (2) may ride in the street or on the sidewalk.

¶ 17        Contrary to plaintiff's claims, we cannot find that the ordinances of the Village which regulate riding in the streets mean that the Village intended for bicyclists to ride in the street. Courts have regularly found that similar language is insufficient to establish that bicyclists are intended users of streets or roadways. For instance, in *Boub*, our supreme court found that language in the Vehicle Code providing that a bicyclist was subjected to the same rights and duties applicable to the driver of a vehicle was "entirely consistent" with a conclusion that bicyclists were permitted, not intended, users of roads. *Boub*, 183 Ill. 2d at 529-30 (discussing 625 ILCS 5/11-1502 (West 1996)). Similarly, in *Latimer*, this court found that a provision of the Chicago Municipal Code directing bicyclists to ride as near as practicable to the righthand

side of a roadway did not establish that bicyclists were intended users of the roadways. *Latimer*, 323 Ill. App. 3d at 472 (discussing Chicago Municipal Code § 9-52-040(c) (added July 12, 1990)). There is nothing differentiating the Village's ordinances at issue here from these types of statutes and ordinances which compels us to reach a different result.

¶ 18    Plaintiff further claims that the Village's ordinances manifest an intent that bicyclists ride in the street through a broad definition of "vehicle." In several places, the Village defines a "street" as "[t]hat portion of a public or private right-of-way having a weight-bearing surface that affords a primary means of vehicular access to abutting properties." Lincolnwood Municipal Code § 15-2.02 (amended Mar. 17, 2011) (zoning rules); Lincolnwood Municipal Code § 16-1-2 (adopted Dec. 6, 2011) (subdivision regulations). In article 3 of the Traffic Code, the Village defines a "bicycle" as "[a] vehicle propelled by human power upon which any person may ride, having at least two tandem wheels either of which is at least 20 inches in diameter." Lincolnwood Municipal Code § 7-3-1 (adopted Dec. 6, 2011). Thus, since a bicycle is a "vehicle," plaintiff claims that streets are intended for bicycles, as well as automobiles.

¶ 19    Plaintiff's argument, however, places too great a weight on the use of the word "vehicle" in the definition of a bicycle. We note that the Illinois Vehicle Code, which has been expressly adopted by the Village (see Lincolnwood Municipal Code § 7-1-1 (amended Nov. 7, 2017)), defines a "bicycle" as "[e]very device propelled by human power upon which any person may ride, having two tandem wheels except scooters and similar devices." 625 ILCS 5/1-106 (West 2018). The Illinois Vehicle Code also specifically excludes "devices moved by human power" from its definition of a "vehicle." *Id*. § 1-217. Additionally, article 3 of the Village's Traffic Code refers to "vehicles" in several other contexts that make clear that bicycles are not included in that definition. For instance, section 7-3-6 provides that every person riding a bicycle shall

9

be granted all of the rights and shall be subject to all of the duties applicable "to the driver of a vehicle." Lincolnwood Municipal Code § 7-3-6 (adopted Dec. 6, 2011). Similarly, section 7-3-7 provides that any person operating a bicycle shall obey the instructions of traffic-control devices "applicable to vehicles." *Id*. § 7-3-7(A). If a bicycle were already considered a "vehicle," there would be no need to specify that rules applicable to vehicles apply to bicycles, as well. Accordingly, we cannot find that the Village's use of the word "vehicle" in defining a bicycle indicates that bicyclists are intended users of its streets.

¶ 20        Next, plaintiff claims that courts have carved out a "safe harbor" where a pedestrian is owed a duty when walking in a street or alley, such as when throwing out trash or reaching a legally parked automobile. See, *e.g.*, *Gutstein v. City of Evanston*, 402 Ill. App. 3d 610, 620 (2010) (a pedestrian was an intended user of an alley where she was required to place her trash); *Torres v. City of Chicago*, 218 Ill. App. 3d 89, 91 (1991) (a pedestrian was an intended user of the immediate area around his parked vehicle for ingress and egress). Plaintiff contends that Denis was riding his bicycle near the curb, where he was directed to ride by the Village's ordinance, and that, therefore, he was within a " 'safe zone' " of the street in which he was an intended user. This argument, however, is a circular one—plaintiff's claim relies on the assumption that Denis is an intended user so long as he uses the street near the curb, which is the very proposition she is attempting to establish. Furthermore, plaintiff has not provided, nor have we discovered, any cases in which the mere fact that a bicyclist was riding along the curb transformed the bicyclist into an intended user of the street. Indeed, as noted, the *Latimer* court expressly found that a requirement that bicyclists ride as close to the right-hand side of the roadway as possible did not transform a bicyclist into an intended user of the roadway, reasoning that the fact that the municipality regulated permitted uses did not transform the

permitted uses into intended ones. *Latimer*, 323 Ill. App. 3d at 472; see also *Olena v. City of Chicago*, 2022 IL App (1st) 210342-U, ¶ 26 (finding unpersuasive the claim that use of the street was necessary to reach marked bicycle routes). While we recognize that the *Alave* court recently found that necessity dictated the use of streets near Divvy bicycle rental stations, that holding was based largely on the fact that the City of Chicago had approved a network of bicycle rental stations throughout the city, and the logical corollary that the city must have intended those bicycles to be ridden on the nearby streets. See *Alave*, 2022 IL App (1st) 210812, ¶ 41. The instant case, however, contains no such manifestation of intent, and therefore, we cannot find that necessity transformed Denis into an intended user of the street.

¶ 21      Finally, plaintiff contends that Denis's status as a minor affords him extra protection when determining whether the Village owed him a duty. Plaintiff claims that minors are not expected to know municipal ordinances and may be intended users even where adults would not be. Our supreme court has made clear, however, that it is the intent of the municipality, not the intent of the particular person using the property, that determines whether the municipality owes a duty under section 3-102(a). *Wojdyla*, 148 Ill. 2d at 425-26; *Boub*, 183 Ill. 2d at 525. Thus, whether a particular individual is aware of the municipality's ordinance is not a determinative factor as to whether someone is an intended user of the property, and the cases cited by plaintiff do not suggest otherwise. In *Ramirez v. City of Chicago*, 2019 IL App (1st) 180841, ¶ 17, we merely noted that the fact that a plaintiff violated an ordinance generally precluded him from being an intended and permitted user of the property but that this rule was not automatic. The plaintiff in that case was not a minor, and we made no findings as to the effect of minority on a municipality's duty. While *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, ¶¶ 55-57, did involve a minor, in that case we found that the 13-year-old plaintiff was an

intended user of a playground that was technically designated for use by individuals under 12, but our holding was based on the fact that there were no signs or notices announcing an age limit, and there was no way that a user would have otherwise known of such an age limit. Here, there is no claim that Denis was violating an ordinance, either knowingly or unknowingly, so neither of the cases cited by plaintiff suggest that Denis should have been treated as an intended user even where an adult bicyclist would not. Accordingly, we cannot find that Denis's age transformed him into an intended user of the street.

¶ 22     In the case at hand, there is no dispute that Denis was a permitted user of the street on which he was riding his bicycle at the time of his injury. It is well-settled, however, that a bicyclist is an intended user of a street only where the municipality has demonstrated its intent through road signs, markings, or other manifestations of intent. See *Boub*, 183 Ill. 2d at 535-36. Here, no such manifestations of intent are present and, therefore, the circuit court properly granted summary judgment in the Village's favor, as the Village did not owe Denis a duty of care. While we recognize that such a result may seem harsh with respect to a specific individual such as Denis, the Tort Immunity Act represents our legislature's attempt to serve the public as a whole, and our supreme court has made clear that whether a municipality owes a duty depends on the nature of the property, not on the particular individual involved. See *Vaughn*, 166 Ill. 2d at 162-63 (whether a particular use of property was permitted and intended is determined by looking to the nature of the property itself).

¶ 23                                CONCLUSION

¶ 24        For the reasons set forth above, the circuit court's grant of summary judgment is affirmed where the Village did not owe Denis a duty of care under section 3-102(a) of the Tort Immunity Act.

¶ 25        Affirmed.

2022 IL App (1st) 210929

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-002834; the Hon. Christopher E. Lawler, Judge, presiding. |
| **Attorneys for Appellant:** | Sofia Zneimer, of Zneimer & Zneimer, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick H. O'Connor and Michael R. Hartigan, of Hartigan & O'Connor P.C., of Chicago, for appellee. |