2023 IL App (2d) 220437-U
No. 2-22-0437
Order filed November 14, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CYNTHIA EDWARDS, | ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 21-L-451 |
| COMMUTER RAIL DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY and THE NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, both d/b/a Metra, | ) ) ) ) ) ) ) ) | Honorable Susan Clancy Boles, |
| Defendants-Appellees. | ) | Judge, Presiding |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Jorgensen and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly dismissed plaintiff's complaint against a public rail authority for injuries she sustained after falling into a hole on property near the railroad tracks. Governmental immunity applied because plaintiff's complaint alleged that pedestrians used the property but did not establish that defendant intended the property for pedestrian use.

¶ 2    Plaintiff, Cynthia Edwards, filed a lawsuit against defendants, the Commuter Rail Division

of the Regional Transportation Authority and the Northeast Illinois Regional Commuter Railroad

Corporation, both doing business as Metra (Metra), seeking recovery for personal injuries she suffered on property owned by Metra. In her original complaint, Edwards also named Pace Suburban Bus Service and the City of Elgin as defendants. Metra moved to dismiss the claims against it, and the trial court granted the motion without prejudice. Edwards voluntarily dismissed the claims against Pace and the City of Elgin. Edwards twice amended her complaint against Metra. Metra moved to dismiss the second amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)), arguing that the complaint failed to state a cause of action and that, under the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 *et seq.* (West 2020)), Metra was immune from liability to Edwards. The trial court granted the motion and dismissed the second amended complaint with prejudice. Edwards filed a timely notice of appeal. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In her second amended complaint, Edwards alleged that Metra owned property between the Pace Bus Depot and the railroad tracks at or about 136 West Highland Avenue in Elgin. The property is separated from the bus depot by a concrete wall. According to the complaint, many individuals from the neighborhood use the property as a walkway along the railroad tracks "to get to other areas along the river." The complaint further alleged that patrons of businesses adjacent to the tracks use the property as a thoroughfare to get from Highland Avenue to East Chicago Street. The complaint also stated that Edwards was homeless and that she had seen other homeless individuals walk into the area.

¶ 5      Edwards alleged that on the night of August 19, 2021, she walked onto the property to urinate. While walking on the property, Edwards fell into a 10-foot-deep hole located along the concrete wall and was injured as a result. Edwards alleged that Metra's negligent failure to

properly maintain the property or warn of the hazard on the property was the proximate cause of her injury. Edwards further alleged that Metra's acts and omissions in maintaining the property were willful and wanton.

¶ 6    In granting Metra's motion to dismiss, the trial court reasoned that, under section 3-102(a) of the Act (*id.* § 3-102(a)), Metra was immune from liability for injuries resulting from the condition of its property unless the injured party was an intended and permitted user of the property. The trial court further reasoned that the allegations of Edwards's complaint did not establish that urination was an intended use of the property.

¶ 7                                    II. ANALYSIS

¶ 8    As noted, Metra moved to dismiss pursuant to section 2-619.1 of the Code. As explained in *Hampton v. Chicago Transit Authority*, 2018 IL App (1st) 172074, ¶ 19:

     "Section 2-619.1 is a combined motion that incorporates sections 2-615 and 2-619 of the Code. [(735 ILCS 5/2-615, 2-619 (West 2020))]. We review a trial court's dismissal of a complaint under section 2-619.1 of the Code *de novo*. [Citation.] A motion to dismiss pursuant to section 2-615 of the Code attacks the legal sufficiency of the complaint by alleging defects on its face. [Citation.] In contrast, a motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the complaint, but raises an affirmative defense or another basis to defeat the claims alleged. [Citation.] Section 2-619(a)(9) permits involuntary dismissal where 'the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' [(*id.* § 2-619 (a)(9))]."

¶ 9    Here, Edwards sought recovery under theories of negligence and willful and wanton conduct. "The elements of a cause of action for negligence are 'the existence of a duty of care

owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach.' " *Dzierwa v. Ori*, 2020 IL App (2d) 190722, ¶ 7 (quoting *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006)). Furthermore, "[n]o separate and distinct tort exists for willful and wanton conduct." *Doe v. Coe*, 2019 IL 123521, ¶ 78; see *Wright v. Waukegan Community Unit School District 60*, 2022 IL App (2d) 210334, ¶ 44. Rather, "willful and wanton conduct is regarded as an aggravated form of negligence. [Citation.] A plaintiff must allege and prove the same elements for a willful and wanton cause of action as she does for a negligence action." *Doe*, 2019 IL 123521, ¶ 78; *Wright*, 2022 IL App (2d) 210334, ¶ 44.

¶ 10     At issue here is the existence of a duty of care. In this context, the question of duty is governed by section 3-102(a) of Act (745 ILCS 10/3-102(a) (West 2020)), which applies to Metra (see *Del Real v. Northeast Illinois Regional Commuter Railroad Corp.*, 404 Ill. App. 3d 65, 71 (2010)) and provides, in pertinent part:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition."

As Edwards correctly observes, courts look to the nature of the property itself to determine its intended use. *Babic v. Village of Lincolnwood*, 2022 IL App (1st) 210929, ¶ 13. Metra's duty to maintain its property does not extend beyond section 3-102(a). See *Hough v. Kalousek*, 279 Ill. App. 3d 855, 860 (1996).

¶ 11    In the portion of its motion seeking dismissal under section 2-619, Metra argued that urination was not an intended use of the property and, accordingly, it owed no duty to Edwards, who entered the property for that purpose. The trial court agreed. We note at the outset that, when a plaintiff files a complaint against a local public entity for failure to maintain its property in a reasonably safe condition, the plaintiff must plead facts establishing that the defendant owed the plaintiff a duty of care under section 3-102 of the Act, and the plaintiff's failure to do so warrants dismissal. See *id.* at 861-62.

¶ 12    Metra argues, as it did below, that urination was not an intended use of its property. As we understand her, Edwards argues that Metra owed her a duty as a pedestrian on the property because Metra intended for the property to be used by pedestrians. Edwards contends that *her* intent—to urinate on the property—is irrelevant to the existence of a duty.

¶ 13    The linchpin of Edwards's argument is the proposition that Metra intended for its property to be used by pedestrians. However, Edwards cites no authority and offers no meaningful argument supporting that proposition. Instead, she simply insists that it is undisputed that the property was intended for pedestrians to use. However, it appears that this point was barely touched upon during the proceedings on Edwards's second amended complaint. In her written response to Metra's motion to dismiss, Edwards advanced the conclusory argument that "pedestrians are most certainly intended users of [Metra's] property." In reply, Metra argued that "[a]lthough [Edwards] generically asserted that Metra intended pedestrians to be on its property, [Edwards] failed to make any factual allegation that [her] use of Metra's property to urinate in the middle of the night was a use Metra both intended and permitted, nor could she." Although Metra did not expressly dispute Edwards's assertion, it clearly did not concede it either. Metra's position was, and still is, *not* that pedestrians were intended and permitted users of the property, but that,

*even if they were*, Edwards's purpose of using the property to urinate did not establish that Metra had a duty to exercise ordinary care to maintain its property in a reasonably safe condition for pedestrians who use the property to relieve their bladders. Although Metra's appellate brief focuses on the question of whether urination was an intended use of the property, Metra expressly contends that Edwards "failed to allege facts showing that Metra permitted individuals to use a dark, small area, between a concrete wall and a line of foliage, adjacent and parallel to railroad tracks for *any* purpose, much less the purpose she specifically alleged in her second amended complaint." (Emphasis in original.) Thus, Metra clearly disputes Edwards's assertion that pedestrians were intended and permitted users of the property. We note that " 'an appellee may argue in support of the judgment on any basis which appears in the record [citation], and an appellate court may affirm a trial court's judgment on any grounds which the record supports [citation], even where those grounds were not argued by the parties [citation].' " *Mack Industries, Ltd. v. Village of Dolton*, 2015 IL App (1st) 133620, ¶ 37 n.7 (quoting *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 48 (Karmeier, J., specially concurring)).

¶ 14    We conclude that Edwards's second amended complaint failed to establish that Metra intended the property to be used by pedestrians. As noted, Edwards is correct that courts look to the nature of the property itself to determine its intended use. *Babic*, 2022 IL App (1st) 210929, ¶ 13. However, although Edwards's second amended complaint alleged that various types of pedestrians used the property, she alleged no facts concerning the nature of the property that would establish that Metra *intended* that pedestrians use the property. The mere fact that members of the public use a public entity's property a certain way is not evidence that the public entity intended

for the property to be used that way.[1] Plaintiff alleges she was injured while walking along a concrete wall obscured by bushes planted next to it. This inhospitable location bears no resemblance to any pathway. Clearly its use by pedestrians was not expected or intended for any purpose. Accordingly, the second amended complaint failed to establish that Metra owed a duty to Edwards, and, therefore, the complaint was subject to dismissal under section 2-619.

¶ 15    Finally, we note that, in her reply brief, Edwards argues that Metra is subject to liability under the "frequent trespasser" exception to the common law rule that a landowner's only duty to a trespasser is to refrain from willful and wanton conduct.  See *Epple v. LQ Management, LLC*, 2019 IL App (1st) 180853, ¶ 17.  Under that exception, "courts have found that a landowner owes a duty of ordinary care to those who are frequent trespassers in a limited area where the landowner knows or should know of their constant intrusion." *Id.* ¶ 18.  Edwards notes that she alleged that homeless individuals, such as herself, frequently use the property in question.  The flaw in Edwards's reasoning is that the exception pertains to a landowner's common-law duty.  However, as noted, Metra's duty is defined not by the common law, but by section 3-102(a), which imposes

---

[1]At oral argument, Edwards's attorney asserted that the property in question was paved, which would seem to bolster Edwards's argument that it was intended for use by pedestrians. However, there is no allegation in the second amended complaint that the property was paved.  We note that the record on appeal contains a written objection by Edwards to a demand by Metra for a bill of particulars.  Interestingly, although at oral argument both parties denied that the record contained any photographs of the scene, there are three such photographs attached to Edwards's objection.  One of the photographs clearly shows that the area is not paved but, rather, is covered with gravel or crushed stone.

liability *only* in favor of those using the property in a manner both intended and permitted. A permitted use is not necessarily an intended use. *Alave v. City of Chicago*, 2022 IL App (1st) 210812, ¶ 24. To apply the frequent trespasser exception to cases governed by section 3-102(a) would create the absurd result that trespassers could engage in an unintended use of a local public entity's property and recover for injuries suffered in circumstances where those engaged in a permitted (but unintended) use of property could not. Accordingly, the frequent trespasser exception does not apply here.

¶ 16                                     III. CONCLUSION

¶ 17    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 18    Affirmed.